The last case is Leiser v. Moore, and that is case 17-3206. We're ready to proceed. Your Honor, may it please the Court, my name is Emily Helsel on behalf of the appellant Joseph Leiser. And you're a law student? Yes, Your Honor. That's great. Thank you. Thank you. Welcome. Thank you very much. Don't be intimidated by us. We're really friendly. Don't believe that. Your Honors, this circuit has repeatedly interpreted the Supreme Court's decision in Whelan v. Roe as establishing a right to privacy and the nondisclosure of personal information. Over two decades ago in ALA v. West Valley City, this Court stated that there is no dispute that confidential medical information is entitled to constitutional privacy protection. Yet despite this clearly established right to privacy and medical information, appellees disclosed Mr. Leiser's potential cancer diagnosis with his friends and family without his consent and for no valid penological purpose. All right. So are there any exceptions to this rule? Not that this Court has created, Your Honor. Inmates generally do have a... It seems to me that prison is a unique situation, is that you have a person in confinement, let's say terminal. Let's say he has developed pneumonia. And he has little contact with his family, but he's become seriously ill. Is there any way that the prison can, in a humanitarian sense, reach out to a member of the family and say, your brother is critically ill, he's not expected to live? I think he would benefit perhaps from a little solace and a little bit of companionship and love from his family in his last days? There's no humanitarian exceptions. Preliminarily, the appellees forfeited the argument that Mr. Leiser's status as an inmate has anything to do with his right to privacy and medical information. Well, I understand that, but I'm asking an abstract question. I'm asking a question that seeks to you as a human, as well as a lawyer, to be, and ask whether there are any exceptions where the prison can try to reach out under that kind of circumstance. Even though the illness is benign, it's not what would, by common law, be considered a loathem disease, just as pneumonia. He can't seek help himself, and he can't consent on his own behalf, one way or another. No, Your Honor, the right of Mr. Leiser's to choose when and where and how to disclose a diagnosis, and that's the very core of the right. And it's not for the prison officials to decide there might be a good reason that they might want to disclose it. The right is Mr. Leiser's alone to disclose it. All right, so there's a cancer case you cite to us where somebody's told that they had cancer, and that causes a violation of privacy. Is this an illness akin to cancer? Is there a loathem disease condition or requirement under the law? No, Your Honor, this case is made abundantly clear in a variety of cases that it's the right to privacy and medical information broadly. The right to privacy has been applied to an HIV diagnosis for both arrestees and probationers. It's also been applied to medical records and to prescription drug records. So the right is in privacy more broadly than a specific diagnosis. But what we say, and it's really hard to speak as precisely as lawyers who read the case years later would like it to have been. The cases, well, what the opposing counsel is saying is that the cases where we've recognized this right have been in the AIDS context. And as Judge Lucero was pointing out, that was, I'm not sure it's true now, but it has been in the past, considered a loathsome disease. And so having that reported around is going to cause a lot of difficulty, emotional and otherwise. Here, the disease is one that would evoke sympathy, not repulsion. And do our cases really extend that far? Can't they be distinguished on that ground, regardless of the language we might have used? Regardless of the language? No, no, no. Is that a cynical comment from a... We always speak more broadly than... Well, you can't, you just cannot write every sentence in opinion as narrowly as you might like. So you ask the reader, read the opinion in the context in which it was written, and that should inform how you interpret what we said. You're taking our language outside of the context of the AIDS fact, which was the salient fact in that case, it seems to me. Yes, Your Honor, the Haring and ALA, which were the cases addressing the HIV diagnoses, were simply applications of an already established right to privacy in the medical information more broadly. In Douglas v. Dobbs, this Court found that prescription drug records were also protected, and stated that even though it had not previously extended this right to privacy in medical information to prescription drug records, that it had no problem deciding in that case that they were entitled to the same constitutional privacy protection because of the confidential information that can be disclosed from knowing the kinds of prescriptions that an individual is taking. And cancer is, while perhaps not a loathsome disease as HIV has been described, it does bring with it its own, and as we cited in our brief, there's a variety of, it's an intensely personal and life-altering diagnosis that comes with it, and the right to privacy in medical information is especially heightened there, where the personal autonomy of the person that this right is attempting to protect is at its peak, where the person needs to be able to decide when and where and to whom to disclose, or whether to disclose at all. It's an intensely personal decision, and the medical, excuse me, writing on that is clear. So it's not as different from HIV as might be argued. Well, let me inquire of your thinking as what Judge Lucero. Are you saying that on the basis of your research, you have found no exception to this rule? Correct, Your Honor. So it's draconian in the fact that contrary to what opposing counsel is saying, that that basically should be limited to a communicable type of disease. You're saying in every instance, and you can read the law, like some of us don't write that loosely, but anyway. There are no exceptions, right? We start at that point, right? Yes, Your Honor. It's a broad right to privacy in medical information. Let me strip away an appendectomy in an emergency, and it's my 21-year-old son. That rule says that that can't be disclosed to the parents? By a government official? Yes. Yes, Your Honor. And the question there might go to... How about an 18-year-old? Yes, Your Honor. It's a constitutional right to privacy in medical information. How about a 10-year-old? Well, Your Honor, I'm not sure going all the way down that path. However, here Mr. Leiser is a grown adult who has that right clearly established. But you see the problem of what you're asking us to write, a rule involving this statute, and there are statutes where there are no exceptions to that rule. But the right of privacy basis, there's just no limit? Your Honor, the opinion that appellant is asking you to write is simply reaffirming your cases that have already decided that there is no dispute, as this Court has said, that there is no dispute that confidential medical information is entitled to constitutional privacy protection. Right. We agree. Absolutely. I think you heard from the questions. I think what we're asking, and I think I hear it through all of our questions, is, is this a rule that is absolute in a Hoppelian sense, that there are no exceptions? There are no exceptions that are applicable here, Your Honor. Well, let me ask you about the Matson case out of the Second Circuit, where the Second Circuit said there wasn't a constitutional right protecting against disclosure of fibromyalgia. Well, Your Honor, in this circuit, the law is considered clearly established that there's a Supreme Court or Tenth Circuit case on point. And here, since we do have a variety of different languages. What is the language? Give us that precise language that you say is so airtight that you can't get through it, even if it were a Hartz rather than a Baldock opinion. Can you repeat the last part of your question? Well, I'm just saying, we had a little repartee here among the bench about writing opinions. And I think you heard it. And the suggestion is that sometimes we can be a little looser with our language than we should be. And if this was a Baldock opinion, it's just bam, like a concrete block. What is the language? Read it to us from our holdings, so you can persuade me that this is so absolute that there's no error coming out of this. Yes, Your Honor. Previously in ALA v. West, which was in 1993. Excuse me. I'm sorry. ALA v. West Valley City. The court stated that there is no dispute that confidential medical information is entitled to constitutional privacy protection. In Herring v. Kenan, the court reaffirmed that there is a constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health. And I think it's indisputable that a cancer diagnosis. Is that so absolute that if Judge Baldock's 21-year-old son is in prison and he falls and cracks his ribs and he's at the hospital, the prison can't call Judge Baldock and say, hey, your kid fell off the exercise bars and broke his ribs? Well, Your Honor, the appellees, again, I would reiterate, forfeited the argument that his incarceration has anything to do with the existence of the right itself. But to your point, the privacy interests of inmates are only curtailed to the extent that there is a valid penological interest being advanced. And here the appellees did not advance any penological interest for the disclosure of Mr. Leiser's cancer diagnosis to his friends and family. So in the abstract, I guess I'll just stop there, is that there have been no penological interests advanced for disclosing Mr. Leiser's information. May I ask about Mattson, please? Absolutely. Mattson came out of the Second Circuit where they had found a constitutionally protected interest in disclosure of someone's having AIDS or a fibromyalgia because it's not something considered loathsome, something like that. It distinguished its precedents. A reasonable court distinguished its precedents, saying this is different. Fibromyalgia is different from AIDS and a transsexual operation. Couldn't a reasonable person read our precedents and say that was in the context of AIDS? Which, I mean, everyone working on a case knows what they're talking about. It was disclosure of something that was considered loathsome and disgusting at the time and would not apply it here. The question is whether it's clearly established. And we make distinctions all the time. And I'm sorry that – well, I'm not going to say anything about that. But it's not unusual for us to look at the factual situation and say it doesn't apply in this circumstance. Why, if the Second Circuit can make that distinction, why can't a reasonable person living in the Tenth Circuit make the same distinction? Well, Your Honor, the appellant – excuse me – the Tenth Circuit has applied it outside of the HIV context as well. Those are not the only cases that establish this right to privacy. It's been applied to prescription drug records and to medical records as well. So it hasn't been confined to simply the HIV context preliminarily. Secondarily, the cancer is not fibromyalgia. And while appellants don't believe that it's necessary to parse down to individual diseases, there's no dispute that cancer is a very big deal. And the diagnosis of cancer brings with it a lot of privacy interests that Mr. Leiser would have been interested in protecting. And the rest of your time is preserved. Yes. Thank you. All right. Good morning. May it please the Court? My name is Terrell Mock, and I'm here representing Defendants Rogers and Moore. Well, Ms. Mock, it seems to me that the problem presented here, and we've joked about it, so to speak, where we've treated it in a light-hearted manner in any event, is one of language. Sure, we may want to be more expansive in our attitude, but it gets pretty tough. What are the standards that you would apply if you were writing the opinion today, assuming that we ruled in your favor? How would you write it? How would you cabin the whole thing? I would grant qualified immunity without determining whether or not the privacy right was violated. Oh, my goodness. So you just want to—you're not—you just want to win, but you want to upset the apple cart. You just want to— I don't think I'm upsetting the apple cart. Well, I'm sorry. I hate to say this, but there is a right to privacy in our medical records, is there not? This Court has established a right to privacy in medical records. That's not what was disclosed. Even with respect to—if I may make a reference to contemporary society, to the fact that the President of the United States uses Rogaine? That has become a big deal. Yes. In the public eye, correct? Correct. But a doctor has no right to go around telling anybody what prescriptions are provided. So those rights are fairly well established. And you're just wanting to have us give qualified immunity to prison officials to say whatever they bloody well please about somebody's health. No, Your Honor, that's not what I'm suggesting. Well, that's what I asked you.  What standards would you have? I think that the point that Judge Hart hit on earlier, which was, you know, if we're sitting up here and we're having this robust debate about whether or not this privacy interest extends to the disclosure of a possible cancer diagnosis and bone spurs, how then is it possible for our prison officials to know, in their reasonable minds, that this law is clearly established and in disclosing this information they're violating— Let me try this on. How about the headlines, newspaper headlines question? Tenth Circuit today rules that a patient has no right to privacy about a cancer diagnosis. No, that's not what I— How do you think that's going to— That wasn't my suggestion. How do you think that's going to wash on the 16th Street Mall? Yes, Your Honor. Public perception. I don't suggest that that be your ruling. My suggestion— What do you suggest that be our ruling? You said that we just granted qualified immunity and goodbye, the back of your hand. Well, I think that you have little choice. It was not clearly established at the time. And in analyzing qualified immunity, the court isn't required— Right. About your medical conditions and your prescriptions. And those were AIDS cases. So what? So what? Well, the Second Circuit thought that was a pretty apt distinction. Well, they made a distinction based upon a stigma that was placed on AIDS cases at the time that those cases were first got in the public mind in the, what, was it 1970s or 80s? Well, I mean, Mastin was decided in 2011. Yeah. And I think the AIDS cases that are in this circuit were decided in 1994 and 2000. Okay. Let me—you know, in the qualified immunity, and I don't mean to be preaching to the choir, but we in this circuit have clearly said that constitutionally there is the basis for the right of privacy in this type of situation. So we have to be looking only at was it clearly established. Am I correct? I will go there. Okay. Well, I hope you would. If I'm looking at that prong of the issue, our law in this circuit has already said that if it's HIV or that type like that, that would make it clearly established, wouldn't it? That's what the circuit has said? Now, in looking at the statute or the parameters of what we can, as judges, look at without making something up on our own, we've got another circuit that has clearly, as Judge Hartz has indicated, has made a variance in there. Now, what would give this court the right to make a variance where we've already clearly said it's a constitutional right and that the parameters of if it's AIDS, there's that protection. Now, we've established those two. You would have us then conditionally establish an area that's saying, well, it's not well established. Let's say that it's cancer. Well, the next case that would come along would be appendicitis or tonsillectomy. So it would never be necessarily well established until we had gone through all possible medical diagnosis. Isn't that right? Well, that might depend on how loosely or tightly you write your opinion, Your Honor. Well, that's my problem. But to your first question, White v. Pauley gives you that avenue. The Supreme Court has been very clear that these questions should be asked with particularity, and instructed the courts not to speak in generality, as in all medical records, all illnesses, all of those things. I think this is the very example of what the Supreme Court was addressing in writing the White v. Pauley opinion. What is it in White v. Pauley that gives the judiciary the power to qualify rights? Well, it asks you to decide whether or not that particular right and the factual situation presented to you was clearly established. Okay. Let me, if I may, with the sufferance of my colleagues, for just a moment, take your mind back to law school. Okay. I don't know. Did you study back when you were there about the difference between a right, a privilege, a duty, and the correlative responsibilities that go or the correlative definitions that go with the definition of a right, privilege, duty, license, whatever? Did you study that? Yes. I'm not quite sure I can reflect the definition. I don't know if you remember back, but this issue's been in the courts forever. And so way back then, there was a guy by the name of Dean Hofeld, who was dean at Yale, and he decided that he wanted to look at this as an issue of language and how courts use language. And he said that the correlative of a right was no right. If I have the right of free speech, Judge Baldock, important as he may be on the Tenth Circuit, or Justice whoever, as important as she may be on the Supreme Court, has no right, no right, to qualify my right. They can't say, well, you can speak, but you can't say this, and you can't say that, and you can say it here, but you can't say it there, and so on and so forth. And so if we have a right of privacy, now let's go back to the right, no right division. If I have a right of privacy in my medical condition and in the drugs I take, then the Tenth Circuit doesn't have the right to say, oh, yeah, but you have this right, but you don't have it here, or you don't have it there, and you can't exercise it here, or you can't exercise it there. So it is a very difficult thing if we are going to turn around and say, oh, well, a prisoner has a right of privacy in his medical condition and her prescriptions, but not X and not Y and not Z, etc. We become not even super legislators, we become super constitutionalists, creating and carving out these rights. So rather than go down that slippery slope and say that there wasn't a right and that the court didn't know what it was talking about when it declared that there was a right to privacy in medical conditions, we just say, well, it's going to have a harsh result in a given case, but it's a right that the prisoner has. What's wrong with that? I understand that you have a difficult job, but you have that responsibility as well. I have the responsibility to go around defining qualifying rights? Yes, under qualified immunity. Yes. We've given you that job to determine whether or not this is a right that is so obvious because it's been established time and time again in this specific circumstances that my jailer in Burlington, Kansas, had to have known that she was violating this inmate's rights. So when I call the hospital and I say, is Judge Hart at the hospital? I say, I'm sorry, we cannot disclose facts about patients at this hospital. Does he have this condition? They say, are you crazy? You have no right to ask us what conditions somebody's in this hospital for or what medications they're taking or their status or their health. Sorry, please bring your power of attorney, sign, et cetera. Isn't that closer to a prison situation than your suggestion that we, under qualified immunity standards, can go around writing the law? Right, and I think what we have to think about here, we have to think about qualified immunity being granted to government actors and their actions having constitutional implications. We're not talking about maybe a hospital that wouldn't have a constitutional implication. So because that is so significant, that constitutional implication, these rights need to be more closely monitored. And that's why the courts have provided qualified immunity. Okay. I understand your argument. Okay. I would like to point out, too, that the Seventh Circuit has also indicated and made this distinction. Because the semi-public discussion of ailments such as a cancerous finger sore, diabetes, the need for eyeglasses, you know, there wasn't a constitutional protection there. That's Franklin. And I think that one's in the brief. And then it's also been recognized in the District of Alabama that the Eleventh Circuit has not, has no cases that clearly establish the right for prisoners to have their HIV status remain confidential that have been entered into in that circuit. And I think, too, you know, you know, to your point, Judge Lucerno, in the Dobbs opinion, you know, you went to great lengths to talk about how this isn't, there's a lot of gray here, you know. And it's hard to define these rights. And it's hard for judges on the Tenth Circuit and the Supreme Court to define these rights. And I think that's the point of having these protections for our government officials so that they can be clear in understanding what they are. Does anybody have any other questions for me? Thank you. Thank you. We've peppered you pretty hard with questions. We could add a minute to make it just a minute and 39 seconds. I appreciate it. Thank you. Thank you, Your Honor. I'd like to clarify an answer to Judge Lucerno's first question. In the scenario where there was the potential that the inmate couldn't consent to the sharing of his information, there's a stronger case there to arguably be a valid penological interest. However, here, the appellee simply could have asked for Mr. Leiser's consent to share this information if they were concerned about those humanitarian considerations in having a support system for his cancer diagnosis. They did not, and he did not consent to this sharing. So there is no valid penological interest. Would you incorporate that in our ruling, the fact that the prison had an opportunity to ask for consent but did not do so? Yes, Your Honor. I believe the fact that Mr. Leiser did not consent to the sharing of his information is important here to the fact that this right was violated. Yes. Well, my point's different, not whether he didn't consent, but whether he wasn't asked if he would consent. I believe if the appellant, or excuse me, if the appellee wanted to disclose that information, if they felt strongly that that private medical information needed to be disclosed for some interest that they felt strongly about, then it is problematic that Mr. Leiser's consent was not sought. And if there's nothing further.  Thank you, Your Honor. Thank you. And we thank your law school for communicating our appreciation for their work on this case. Thank you. Does that have it? The case is then submitted to Counselor Hughes. That is the last case of the term for this panel. And so if you will declare the recess, please.